(No. 5800—

LYMANN HALLEY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 3, 1967.*

ROSS ARMBRUSTER, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; DOUGLAS G. OLSON, Assistant Attorney General, for Respondent.

BURKS, J.

The complaint seeks damages for personal injuries alleged to have been sustained when Claimant allegedly

slipped on a bar of soap while a patient at Alton State Hospital. The soap, Claimant contends, was negligently left on the floor by an attendant in the restroom on January 12, 1969.

The Claimant, who had been treated at Alton State Hospital on prior occasions, was admitted again on January 10, 1969, suffering from alcoholic withdrawal, shaking, and admitting under cross-examination, that he had been hospitalized five times for alcoholism and had been an alcoholic for 14 years. Prior to this confinement he had been in a fight in a laundromat owned by his brother in East St. Louis. In the fight he sustained some broken ribs and some stitches taken in his head. He continued to drink until the 4th or 5th of January when he was picked up by the Cahokia police for walking in the road. Although he insists that he was not drunk at this time, he does state that he was sick, weak and wobbly. He was in the City Jail at Cahokia for two or three days, then spent one or two days in the County Jail. From there he was taken to Alton State Hospital, still feeling sick and shaky. On the day he was admitted, January 10, 1969, he was assigned to Birch Cottage. Claimant testified that he was able to sleep a little bit more at Alton State Hospital than he had been able to do in jail. He denied any blackouts on the 11th or 12th of January. Claimant testified that on January 12, 1969, although he slept pretty good during the night, he felt bad when he got up, being sick to his stomach and had what seemed like a hangover, but not an alcoholic hangover, a fact he did not explain.

Claimant awoke on the morning of January 12, 1969, at about 7:00 with a headache and upset stomach. Claimant testified that he had not eaten for three days and that he refused breakfast on that morning. He requested medication which was denied. Claimant then

sat in a chair in the dayroom while the other patients of Birch Cottage had breakfast. Both psychiatric aides, Suzanne Mitchem Schaefer and Joan Hazzard, recall refusing Claimant medication and both testified that Mr. Halley fell asleep while seated in the dayroom during breakfast.

Claimant, sometime during breakfast, went to the washroom "walking carefully" because he was having "a little difficulty walking." While in the restroom he fell, hitting his head on the handle of the toilet. Claimant testified that at first he didn't know how or why he slipped and fell, but the next day when he was admitted to the Medical-Surgical Hospital, he discovered a small slice of soap on the sole of his shoe. He further testified that at the time he fell, the tile floor of the restroom appeared to be wet in spots as if it had been mopped. Mr. Halley testified that he showed the soap to Mrs. Barbara Phelps at the Medical-Surgical building, but she does not recall Mr. Halley showing her the soap.

The psychiatric aides, Suzanne Schaefer and Joanne Hazzard, checked the bathroom floor and did not notice whether it was wet. Nurse Stevenson indicated that it might have been. As for the existence of a banana peel or pieces of soap on the floor, all three witnesses denied that condition.

According to the three aides, the bathrooms were mopped three times a day and the first time was not until after breakfast. After mopping, the door would be locked until the floor was dry.

The medication which Claimant received was prescribed by Dr. Rosita Sumagang who prescribed: Librium, 25mg. three times a day at 8:00 a.m., 1:00 p.m., and 6:00 p.m.; Glibrum, 100mg. PRN (as needed); Chloral Hydrate, 500mg. at night, plus aspirin and

vitamins. Librium is prescribed for patients who are agitated, particularly if having delirium tremens. Chloral Hydrate, unlike Librium, is a sedative for which the hypnotic dosage is between 500mg. to 2000mg., depending on the patient. The record is clear that the Claimant was blind in the left eye after his fall on January 12, 1969.

We find that the Claimant has not shown by a preponderance of the evidence that the Respondent was negligent in its treatment of him nor in its maintenance of the ward.

It is fundamental that the Respondent is not an insurer of the safety of persons residing at the various State Hospitals under its jurisdiction. Rather, the Respondent is to be held to that degree of care which a reasonably prudent individual or organization would exercise under the same and similar circumstances. *Lindberg v. State of Illinois,* 22 Ill.Ct.Cl. 29; *Ward v. State,* 24 Ill.Ct.Cl. 142.

In *Lindberg* the Claimant slipped and fell on a lavatory floor which was moist, wet and slippery. *Lindberg* at 30. The court found that the Claimant was an "invitee" at the State Park and lacking a showing that Respondent knew or in the exercise of a reasonable care should have known that the floor was slippery at the time of the accident, the State could not be found negligent. *Lindberg* at 38.

The facts in the instant case correlate with *Lindberg* in that the record is devoid of any showing of notice, actual or constructive, as to a dangerous condition of the lavatory floor. Furthermore, the testimony of the psychiatric aides and nurses shows the opposite to be true. The bathrooms were *not* mopped until 8:30 a.m., both after breakfast and after Claimant's fall. If Claim-

ant did fall on a piece of soap the size of a quarter, as he maintains, then there still is no showing that the Respondent knew or in the exercise of reasonable care should have known of the condition, for the soap could have been dropped there by any one of the numerous patients in Birch Cottage. Of course, the above assume that Claimant fell as a result of the soap on his shoe found the following day by Claimant. This, even if viewed most favorably for Claimant, hardly is more than supposition and insufficient to meet Claimant's burden of proof.

We also find that the Claimant failed to exercise due care for his own safety. Claimant freely admits that he was feeling ill, had not eaten for three days, and was under sedative medication. He states that he walked carefully because he was having trouble walking. In *Lindberg* the Claimant stated that she was walking carefully because the floor was wet. In *Lindberg* the court found that Claimant assumed the risk when she walked on a wet floor she knew to be such. Here, Mr. Halley not only says that he knew that the floor was wet, but that he was also having difficulty walking. Whether his difficulty was due to his condition of alcoholic withdrawal or lack of food and sleep, or the medication he was receiving, or a combination of the above is unclear. However, the Claimant assumed all normal, obvious or ordinary risks attendant on the use of the premises. To walk as Claimant contends on a freshly mopped lavatory floor, when mere walking was difficult, is not a sufficient showing of an exercise of due care for one's own safety.

Claimant has not shown why he could not have asked for assistance from one of the psychiatric aides on the ward or that his mental condition was such as to

make him oblivious to the attendant dangers of walking on a freshly mopped floor.

The duty of an institution to protect its patients has been stated and the degree of care required has been amplified in *Slater v. Missionary Sisters of Sacred Heart,* 20 Ill.App.3d 464, 469:

> Although a hospital is not an insurer of a patient's safety, it owes him a duty of protection and it must exercise the degree of reasonable care toward him as his known condition may require ... Foreseeability of harm is an essential element to actionable negligence against a hospital for breach of duty of care to a patient. ...

We agree that the hospital is under a duty to give reasonable care to the patient; that "reasonable" is to be determined by the foreseeability present; and that the duty of care required by the hospital towards a patient that is more likely to be injured is greater than the duty of care a hospital owes to another patient who is less likely to hurt himself or be hurt.

The Claimant alleges that the reason he fell was that the floor of the bathroom had been freshly mopped and soap had been left on the floor. The Claimant slipped and fell at the time the other patients were eating breakfast. All the testimony of the medical technicians and nurses aides agreed that the usual practice of the hospital was to mop the floors of the bathrooms after breakfast. The door to the bathroom that was mopped would be locked until the floor was dry. All the witnesses agreed that sometimes it was necessary to mop the floors at other than scheduled times, but none mentioned that the policy of locking the doors after mopping would at any time be abandoned.

The Claimant was being treated for alcoholism, had been medicated, and had not eaten for several days. It was obvious from the amount of notations that were recorded about the Claimant as a patient that he was

closely watched. The amount of time that elapsed between the point Joanne Hazzard, a mental health technician, left the Claimant asleep in a chair, and the time she saw him on the bathroom floor was about 10 minutes. During this period the Claimant, knowing that he was unsteady on his feet, walked past the nurses' station without notifying anyone, and fell in the bathroom.

To impose liability upon the Respondent under the facts in this case would be holding that anything less than a full-time bodyguard would constitute negligence on the part of the Respondent. Such is not the law.

This claim is denied.